IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DERRICK D. DUNLEVY,

       Plaintiff,

  vs.                                Civil Action 2:11-CV-863
                                            Judge Watson
                                            Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

       Defendant.

## REPORT AND RECOMMENDATION

### I.
### Introduction and Background

This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disabled adult child's insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 12, the Commissioner's *Memorandum in Opposition*, Doc. No. 18 and plaintiff's *Reply*, Doc. No. 21.

Plaintiff was awarded child's Supplemental Security Income ["SSI"], beginning at age 7, in connection with his attention deficit disorder, attention deficit hyperactivity disorder and oppositional/defiant disorder. *PageID* 179. After the death of his father in 2005, plaintiff received survivor's child's insurance benefits from December 2005 to June 2008. *PageID* 173. In June 2007, plaintiff's SSI payments were suspended because of the excess income attributable to his receipt of child's insurance benefits. *See* 20 C.F.R. § 416.1335. *PageID* 170-75. When plaintiff reached the age of 18 in June 2008, he no longer qualified for child's insurance benefits. *See* 20 C.F.R. §404.352(b)(3); *see also PageID* 173.

Acting through his mother, plaintiff filed his application for child's insurance benefits in April 2010, claiming benefits as a disabled adult child under his father's Social Security account. *PageID* 223-25. Plaintiff alleges that he is disabled as a result of attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, depression, schizophrenia and personality disorder. *PageID* 198. The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on December 19, 2009, at which plaintiff, represented by a non-attorney representative, appeared and testified, as did his mother and Casey B. Vass, who testified as a vocational expert. In a decision dated February 26, 2010, the administrative law judge found that plaintiff has the residual functional capacity for a reduced range of light work that permits the performance of work that exists in significant numbers in the national economy and that plaintiff is therefore not disabled within the meaning of the Social Security Act. *PageID* 69-80. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 25, 2011. *PageID* 59-62.

## II.

### Testimony

Plaintiff was 19 years of age when the administrative law judge issued his decision and 7 years of age on the alleged disability onset date. Plaintiff is a high school graduate, although his school records indicate that he received special education services "as a student with an Emotional Disturbance." *PageID* 226.

Plaintiff testified at the administrative hearing that he lives at home with his mother and his twin sisters. *PageID* 92. He does not have a driver's license and does not drive. *PageID* 92-93.

2

He cannot read a newspaper. *PageID* 106. He has never worked. *Id*.

Plaintiff has anger issues: "I act out and break stuff and I argue and fight with my mom and my grandma and I end up like breaking stuff in my house sometimes and fight with my sisters. I can't get along." *PageID* 95. He was once arrested for kicking a teacher and was placed in a detention center for one year.[1] *PageID* 109. He was frustrated by his inability to complete school assignments and by the fact that other students made fun of him. *PageID* 109-10. He has punched holes in the walls and has broken a door and knickknacks. *Id*. His mother has called the police, although not within recent years. *PageID* 95-96. Plaintiff also experiences panic attacks two to three times a month. *PageID* 96. His mood swings are frequent. *PageID* 97. He prefers to be by himself. *PageID* 96. His medications help "a little bit." *PageID* 108.

Plaintiff can care for his personal needs. *PageID* 98. He does not sleep well at night. *Id*. He naps throughout the day. *PageID* 103-04. On a typical day, plaintiff watches television and stays in his room. *PageID* 99. He helps his mother pick up around the house. *Id*. Although plaintiff testified that he does not "go out of the house," *PageID* 99, he also testified that he went deer hunting the prior hunting season, *id.*, and went fishing about 30 days during the prior fishing season. *PageID* 105. He gets long "really well" with his grandfather and enjoys spending time with him. *PageID* 100. He has no friends. *PageID* 101.

He once tried to get a job, but was unsuccessful because he does not like to be around people. *PageID* 101.

Plaintiff's mother, Melinda Lou Dunlevy, also testified at the administrative hearing. *PageID* 113-23. According to Ms. Dunlevy, plaintiff spends his days sitting in his room listening to

---

[1] Plaintiff's mother testified that plaintiff was detained for three (3) months. *PageID* 118.

the radio. *PageID* 113. He does not interact with others, even at family gatherings. *PageID* 115. When her son "throws his fits," he destroys everything. *PageID* 114. His anger is easily triggered. *Id*. She does not believe that plaintiff can control his anger. *PageID* 116. She does not believe that his medications help. *PageID* 116.

Casey B. Vass, the vocational expert, was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity for light exertion limited to repetitive tasks not involving public contact or pressure to perform rapidly and without strict production deadlines and only limited social interaction. *PageID* 124. In response, the vocational expert testified that such a claimant could perform more than 500,000 light jobs in the national economy, including such jobs as laundry worker, hand packer and cleaner. *PageID* 124-25.

### III.

### The Medical Evidence of Record[2]

In June 2002, when plaintiff was 11 years old, he presented to the Cleveland Clinic emergency room with his mother for apparent suicidal ideation and visual and auditory hallucinations. *PageID* 258-64. He was "visibly quite angry." *PageID* 258. He was admitted for observation. *PageID* 259, 700-67. A history of psychiatric treatment was noted, including a prescription for Ritalin, since the age of 3. *PageID* 708.

---

[2]The record contains additional medical evidence including more records from the 2002 Cleveland Clinic admission and treatment records from the Worthington Center covering a period after the administrative law judge issued his decision, including an August 2010 opinion from Dr. Matisi. *PageID* 700-99, and a letter from plaintiff's mother. *PageID* 800-12. That evidence was not before the administrative law judge but was submitted to the Appeals Council. However, that evidence is not a part of the record for purposes of substantial evidence review of the administrative law judge's decision. *See Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996).

Plaintiff received mental health treatment from Tri-County Mental Health and Counseling Services from January 2003 to May 2008. *PageID* 320-62, 368-401, 434-96. Plaintiff's diagnoses included conduct disorder, bi-polar disorder, cyclothymia and oppositional defiant disorder. Persistent problems at home and at school were reported. *See, e.g.*, *PageID* 340, 377, 388. He was placed in an alternative school. *See PageID* 516-28, 548-670, 673-99.

Since 2005, Plaintiff has treated with psychiatrist Catherine Matisi, D.O., who diagnosed bipolar affective disorder I mixed. *PageID* 529-31. A May 2007 mental status examination showed average eye contact, mild agitation, no delusions or hallucinations, and no aggressive behavior. *PageID* 529. Plaintiff's mood was depressed, anxious, angry and irritable. His affect was labile. *PageID* 530.

In October 2007, when plaintiff was 17 years old, he was hospitalized at the Ohio Hospital for Psychiatry for eight days following reports of suicidal ideation. *PageID* 267-315. At the initial assessment, plaintiff's memory was intact, he was oriented and had adequate intellectual functioning. His affect was appropriate, his mood was anxious and irritable and his judgment was poor. His thought process was coherent and content was normal. Visual and auditory hallucinations were reported. Plaintiff voiced numerous somatic complaints. Upon discharge, plaintiff was no longer voicing suicidal or homicidal ideation. Plaintiff was discharged with diagnoses of bipolar disorder, NOS, history of ADHD and intermittent explosive disorder. *PageID* 268. He was assigned a Global Assessment of Functioning ("GAF") of 60. Plaintiff's medication was adjusted and outpatient treatment was recommended. *Id.*

In July 2008, Dr. Matisi completed a daily activities questionnaire in which she reported that plaintiff's mother makes

few demands on him. *PageID* 363-64. Plaintiff had few friends and did little outside the home; he spent his days watching television, playing video games and listening to music. *Id*. Dr. Matisi also completed a mental status questionnaire. *PageID* 365-67. Dr. Matisi found no gross evidence of a thought disorder but evidence of mild paranoia. According to Dr. Matisi, plaintiff's history of poor compliance with treatment and limited commitment to improvement, combined with his psychological impairments and the fact that his mother imposed few demands at home, "have created poor tolerance for stress or other demands to conform behavior." *PageID* 366.

In November 2008, after he reached the age of 18, plaintiff's treatment with Dr. Matisi was transferred to a different clinic, the Worthington Center. *PageID* 508-12. Dr. Matisi noted that plaintiff had problems with attention, concentration, focus, irritability, anger, lability and impulsivity. *PageID* 446. Progress notes from July to December 2009 indicated good progress with mood and focus. *PageID* 497-507.

In a December 2009 assessment of plaintiff's mental functioning, Dr. Matisi reported that plaintiff had "poor" or "no" ability in the following work related areas: following work rules, relating to coworkers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, or maintaining attention and concentration. According to Dr. Matisi, plaintiff's abilities to relate predictably in social situations and to maintain personal appearance were "fair," but plaintiff had no useful ability to behave in an emotionally stable manner. Dr. Matisi concluded that plaintiff is "unemployable." *PageID* 430-32.

In August 2008, Gary S. Sarver, Ph.D., performed a consultative psychological evaluation, which included testing and a diagnostic interview, at the request of the state agency. *PageID* 402-09. Dr. Sarver noted that plaintiff's independent living skills

appeared to be fair, although he depended on his mother to take care of him. *PageID* 402. Plaintiff reported recent weight loss, diminished energy, depression, and anger. Dr. Sarver characterized plaintiff as pleasant, cooperative, interactive, and responsive to the demands of the test situation. *PageID* 403-04. On testing, plaintiff achieved a verbal IQ score of 79, a performance IQ score of 77, and a full scale IQ score of 76, *PageID* 406, results that were "considerably below" the results of testing in 2002. Dr. Sarver attributed that discrepancy to the use of two different testing protocols (WISC-3 versus WAIS-III) and felt that the current results were "an accurate reflection of how he is currently functioning." *PageID* 406. Dr. Sarver reported that plaintiff's abstract reasoning, common sense and judgment were within the borderline range. Plaintiff's insight was poor with little understanding of his intrapsychic dynamics or the emotional complexities of interpersonal relationships. *PageID* 405. Dr. Sarver reported that plaintiff's attention, concentration, and persistence were appropriate. *PageID* 404. Dr. Sarver noted that plaintiff had no behavioral manifestation of the non-dominant parietal lobe attention deficits associated with ADHD. *PageID* 407. Dr. Sarver diagnosed an adjustment disorder, with depression and anxiety, and a personality disorder. *Id.* Plaintiff was assigned a GAF score of 51. *Id.* According to Dr. Sarver, plaintiff could understand and follow simple one- and two-step job instructions and could perform simple, repetitive tasks. Plaintiff was moderately limited in his ability to relate to others and to manage work stresses. *PageID* 408. Plaintiff would likely have difficulty organizing, structuring and working towards goals and would likely have difficulty containing his anger, managing his frustration and controlling his impulses. He would likely depend on other people and/or situations to structure life for him. *Id.*

State agency psychologist Bruce Goldsmith, Ph.D., reviewed the file in September 2008. *PageID* 410-27. According to Dr. Goldsmith, plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. *PageID* 424-25. Based on plaintiff's clinical interview and Dr. Sarver's findings, Dr. Goldsmith concluded plaintiff retained the ability to understand, recall and follow simple instructions in a workplace that did not present pressure to perform rapidly or require lot of social interaction or strict production deadlines. *PageID* 426. Dr. Goldsmith also completed a "Psychiatric Review Technique" form on which he opined that plaintiff had moderate restrictions in activities of daily living, in maintaining social functioning and in maintaining concentration, persistence, or pace. *PageID* 420. In January 2009, state agency physician David Demuth, M.D., affirmed Dr. Goldsmith's assessment. *PageID* 428-29.

## IV.

### EDUCATIONAL RECORDS

In January 2003, plaintiff withdrew from Brunswick City Schools and transferred to the Athens City Schools, where he was assigned to classes for students with a severe behavioral handicap

8

["SBH"]. *PageID* 382. Plaintiff remained in an alternative school for SBH students until his graduation in 2008. *PageID* 791. In 2006, plaintiff was suspended from school on a number of occasions. He was also expelled from school, charged with unruliness and placed on probation. *See PageID* 340, 349, 350, 354, 399. The following fall, plaintiff was again suspended, and continued on probation to compel him to behave and to take his medications as prescribed. *PageID* 386.

## V.
### Administrative Decision

In his decision, the administrative law judge found that plaintiff had not attained age 22 as of August 1, 1997, his alleged disability onset date.[3] *PageID* 71. The administrative law judge characterized plaintiff's severe impairments as borderline intellectual functioning, affective disorder, intermittent explosive disorder and obesity. *Id.* The administrative law judge also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Specifically, the administrative law judge determined that plaintiff's mental impairments neither met nor medically equaled the "B" criteria of Listings 12.04, 12.05 and 12.08. *PageID* 72. The administrative law judge also found that the record failed to document that the "C" criteria of Listing 12.04 had been met. *PageID* 72-73.

The administrative law judge found that, from a mental standpoint,[4] plaintiff has the residual functional capacity to

---

[3] For purposes of child's insurance benefits on the basis of a disability, a claimant over 18 years of age must establish that he became disabled prior to the age of 22. 20 C.F.R. § 404.350(a)(5).

[4] Plaintiff does not challenge the administrative law judge's finding that plaintiff has the exertional residual functional capacity for light work.

9

perform routine repetitive tasks that require no public contact or pressure to perform rapidly and which involves only limited social interaction and no strict production deadlines. *PageID* 74. The administrative law judge based this finding on the reports of the consultative examiner, Dr. Sarver, and the reviewing psychologist, Dr. Goldsmith, to whose opinions the administrative law judge accorded "great weight" because they are consistent with and well supported by the record as a whole. *PageID* 78. The administrative law judge gave "no weigh[t]" to the opinion of plaintiff's treating psychiatrist, Dr. Matisi, "because it is inconsistent with the record from Worthington Center, as well as the record as a whole." *PageID* 79.

Relying on the vocational expert's testimony, the administrative law judge found that plaintiff is capable of performing a significant number of jobs in the national economy. *PageID* 79. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Act. *PageID* 80.

**IV.**

**Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health &*

*Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

In his *Statement of Errors*, plaintiff contends, first, that the administrative law judge improperly ignored the earlier finding of disability made in connection with plaintiff's award of SSI benefits. As the Commissioner notes in the *Memorandum in Opposition*, however, the standards governing the award of child's SSI benefits and the standards governing the award of child's insurance benefits are different. *Compare* 20 C.F.R. § 416.924 *with* 20 C.F.R. § 416.987. The fact that plaintiff was awarded child's SSI benefits is simply not determinative of his application for child's insurance benefits. Moreover, and contrary to plaintiff's characterization of the record, the administrative law judge did not ignore evidence of plaintiff's mental impairments prior to reaching the age of 18. *See, e.g., PageID* 76 ("The record begins in October 2002 . . ."). Plaintiff's objection in this regard is without merit.

Plaintiff also argues that the administrative law judge mischaracterized and ignored material evidence of plaintiff's disability. Specifically, plaintiff contends that, given the totality of the record, the administrative law judge made findings of fact unsupported by substantial evidence in the record. Although the Commissioner of Social Security must consider the record as a whole and provide a statement of evidence and the reasons on which

11

the decision is based, *see* 42 U.S.C. § 405(b)(1), the administrative law judge need not explicitly address every piece of evidence in the record. *Kornecky v. Commissioner of Social Security,* 167 Fed. Appx. 496, 507-08 (6th Cir. 2006)("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(internal quotation marks omitted); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001). The administrative decision in this case adequately demonstrates that the administrative law judge considered the entire record. The fact that plaintiff disagrees with the Commissioner's evaluation of the evidence does not alone constitute grounds for rejecting that evaluation.

Plaintiff contends that the administrative law judge erred by rejecting the opinions of the plaintiff's treating psychiatrist, Dr. Matisi, without good reason. The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight the opinion is entitled to by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 416.927(d)(2)-(6); *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating

provider, *i.e.,* reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007), citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

As noted *supra*, the administrative law judge accorded no weight to Dr. Matisi's opinion of disability, simply characterizing that opinion as "inconsistent with the record from Worthington Center, as well as the record as a whole." *PageID* 79. This statement simply does not provide "good reasons" for discounting Dr. Matisi's opinion, nor does it provide reasons "sufficiently specific to make clear to any subsequent reviewers" the reasons for according "no weigh[t]" to that opinion. *Rogers*, 486 F.3d at 242. The Court therefore concludes that the matter must be remanded for further consideration of Dr. Matisi's opinion of disability.[5]

## V. CONCLUSION

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded for further consideration of the opinions of plaintiff's treating psychiatrist.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the

---

[5]In his *Reply,* plaintiff also urges remand, under Sentence 6 of 42 U.S.C. § 405(g) for consideration of new and material evidence. *Reply*, p. 9 n.6. On remand, plaintiff remains free to address any new and material evidence before the Commissioner.

basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: July 30, 2012                           *s/Norah McCann King*
                                              Norah McCann King
                                              United States Magistrate Judge